NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

MICHAEL MCCALLUM, *Petitioner/Appellee*,

*v.*

ERIN COSTELLO, *Respondent/Appellant*.

No. 1 CA-CV 25-0710 FC

FILED 06-22-2026

Appeal from the Superior Court in Maricopa County
No. FC2016-070790
The Honorable J. Justin McGuire, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Lazenby Law Firm, PLLC, Glendale
By Christopher R. Lazenby
*Counsel for Petitioner/Appellee*

Erin Costello, Glendale
*Respondent/Appellant*

---

**MEMORANDUM DECISION**

Chief Judge Randall M. Howe delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge Veronika Fabian joined.

---

**H O W E**, Judge:

¶1          Erin Costello ("Mother") appeals the superior court's order addressing legal decision-making, parenting time, and child support. For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2          Mother and Michael McCallum ("Father") share one minor child, Caleb (a pseudonym), born in 2012. Although Father acknowledged paternity and remained in a relationship with Mother until 2015, they never married. In 2016, after ending their relationship, the parties agreed to joint legal decision-making and parenting time. The agreement also prohibited either parent from using marijuana or alcohol "eight hours prior to or during the time" they cared for Caleb. The court adopted their agreement and ordered Father to pay child support.

¶3          In 2024, Mother petitioned for sole legal decision-making, to be allowed "to relocate with the child to California" where Caleb would "primarily reside" with her, and for Father to "exercise supervised parenting time" and "undergo anger management classes and a batterers intervention program."

¶4          Before the trial on Mother's petition, the court addressed two motions for temporary orders. In response to the first motion, the court found that "Father has committed an act of domestic violence," awarded Mother sole legal decision-making, and restricted Father's parenting time to supervised time only. It also appointed an advisor to create a report and make recommendations regarding the best interests of the child.

¶5          Following Father's subsequent motion and submission of additional evidence, including the advisor's report, the court held a hearing and found that Father had "submitted uncontroverted evidence that he has not been charged with any crime arising out of the" alleged domestic violence incident. The court also noted that Caleb, now twelve, told the court appointed advisor that "he has never witnessed any physical violence

between Father and [the] alleged victim" and "that he wanted to spend more time with Father and did not think that supervision of their time together was necessary." The court thus found a substantial change in circumstances since the entry of the temporary orders and ordered the parties return to joint legal decision-making and unsupervised equal parenting time. Mother moved for the court to conduct an *in camera* interview with Caleb before the trial, arguing he was "of sufficient age (12 years old) and maturity to be interviewed." The court denied her motion.

¶6        At the trial on Mother's petition, the court heard testimony from the appointed advisor, Mother, and Father. The advisor's report was admitted into evidence. The report revealed that Caleb "was adamant that he wants to resume the equal parenting schedule" and "does not like that he does not get to spend more time with Father." The advisor testified that Caleb "had positive things to say about both parents" and "there was insufficient information that Father ha[d] abused or neglected [Caleb]."

¶7        In her testimony, Mother agreed that Caleb "has a good relationship with both [her]self and with Father," "that he loves" both parents, and that "he enjoys spending time with" both parents. She also testified that Caleb had friends in his current school, was an honor student doing "very well" in school, and was involved with cross-country and violin.

¶8        Mother further testified that she and her fiancé both worked for her fiancé's mother's company and that "[t]he whole company . . . has moved" to California, including all employees. She then explained that even if the court denied her request to relocate Caleb, she would still move to California for her work. Mother testified that Caleb told her "he has been with his father when his father has been drinking." She also admitted a photo of Father drinking from a bottle while with Caleb and testified that Father had a previous for conviction for driving under the influence ("DUI").

¶9        Father testified that, if Mother moved to California, he would care for Caleb most of the year and "absolutely" support Caleb's visiting her during school breaks. He testified that Caleb was close with Father's family who live nearby, that he enjoyed his current school, teacher, and friends, and that he had never expressed a desire to attend a different school. Father also testified that, although not required by the court, he tested his blood alcohol levels for three straight months. The testing results were admitted and revealed that, in three months of daily tests (sometimes

multiple times a day) Father only twice had a blood alcohol level above 0, once showing a 0.034 and once a 0.014.

¶10    Regarding domestic violence, Father testified to one incident where his ex-girlfriend hit him repeatedly before he defended himself and explained that no criminal charges were pressed against him. He admitted the police report, which included a statement from a witness who "saw the whole thing" and told officers that Father's ex-girlfriend was "punching and kicking" him while he "had his arms and hands up by his head and was tucked down." He also admitted two documents from the court showing that criminal charges were not filed against him for the incident or regarding any other issues. Father also admitted evidence from four separate programs showing he completed counseling, group classes, and online courses all educating him on domestic violence and anger management.

¶11    The court found that "[t]he testimony and the [advisor] report all establish that both parents have an excellent, loving relationship with the child" and that "[t]he child specifically told the [advisor] that he likes spending equal time with both parents." It weighed the factors set out under A.R.S. §§ 25-403(A) and -408(I) and concluded that relocation to California was not in Caleb's best interests. The court also found "[a]fter considering all of the evidence" that Father committed no act of domestic violence. It found no "substantial and continuing change of circumstances as it relates to legal decision-making and parenting time" and ordered the parents to continue with the joint legal decision-making and parenting time they agreed to in 2016.

¶12    The court acknowledged Mother's testimony that she intended to move to California regardless the court's denial of her request to relocate Caleb; and it set forth an alternate parenting time schedule "in the event that [she] moves her residence to California." Finally, the court found that, although a change in circumstances had occurred for purposes of child support, the change would not be continuing because Mother testified she intended to move to California. It thus denied Mother's request to alter the child support amount.

¶13    The court certified its order final under Arizona Rule of Family Law Procedure 78(c). Mother appealed and we have jurisdiction. A.R.S. §§ 12-2101(A)(1), -120.21(A)(1).

**DISCUSSION**

**¶14**        Mother argues that the superior court erred in (1) denying her request for an *in camera* interview with Caleb, (2) "failing to apply the domestic-violence presumption under A.R.S. § 25-403.03" in ordering joint legal decision-making, and (3) "failing to apply A.R.S. § 25-403.04 in light of Father's substance-abuse history."

### I.        *In Camera* **Interview**

**¶15**        "The court *may* interview [a] child in chambers to ascertain the child's wishes as to the child's custodian and as to parenting time." A.R.S. § 25-405(A) (emphasis added); *see also* Ariz. R. Fam. Law P. 12(a) ("[T]he court *may* conduct an *in camera* interview with a minor child who is the subject of a legal decision-making or parenting time dispute to ascertain the child's preferences as to both.") (emphasis added). The decision to conduct such an interview—or not—is left to the court's discretion. *See* A.R.S. § 25-405(A); Ariz. R. Fam. Law P. 12(a); *J.A.R. v. Superior Court,* 179 Ariz. 267, 274 (App. 1994). The court appointed advisor interviewed Caleb who told her that he liked spending time with both parents and wanted to resume the equal parenting schedule. The court had sufficient evidence of Caleb's perspective and preferences from the court appointed advisor's report and did not abuse its discretion in deciding against an *in camera* interview.

### II.        **Domestic Violence**

**¶16**        Mother claims that, because in its prior temporary order the court found "that Father committed domestic violence, A.R.S. § 25-403.03 required the court to presume that joint legal decision-making was contrary to the child's best interests and to make explicit written findings under A.R.S. § 25-403.03(E) before granting joint legal decision-making or expanding parenting time." We review an order for legal decision-making or parenting time for abuse of discretion which occurs "when the record is devoid of competent evidence to support the decision, or when the court commits an error of law in the process of reaching a discretionary conclusion." *Engstrom v. McCarthy*, 243 Ariz. 469, 471 ¶ 4 (App. 2018) (cleaned up).

**¶17**        True, the court did at one point find that Father committed an act of domestic violence against his ex-girlfriend. If a parent commits an act of domestic violence *against the other parent* it triggers "a rebuttable

presumption that an award of sole or joint legal decision-making to the parent who committed the act . . . is contrary to the child's best interests." A.R.S. § 25-403.03(D). The court must then make specific findings under § 25-403.03(E) to determine whether the party rebuts the presumption. *See DeLuna v. Petitto*, 247 Ariz. 420, 424–25 ¶ 16 (App. 2019).

**¶18** But here, the allegation of domestic violence, and the court's previous finding, concerned Father and his ex-girlfriend, not Father and Mother. The evidence fails to establish that Father committed an act of domestic violence *against Mother*. Thus, the presumption does not apply and the court did not—as Mother argues—abuse its discretion by declining to make "express written findings" under § 25-403.03(E).

### III.    Alcohol Use

**¶19** Mother next argues that the court failed to properly apply A.R.S. § 25-403.04 because "[t]he statute requires the court to presume that legal decision-making and parenting time with a parent who abuses alcohol is not in the child's best interests." We review an order affecting legal decision-making and parenting time for abuse of discretion. *Engstrom*, 243 Ariz. at 471 ¶ 4. Under A.R.S. § 25-403.04(A),

> [i]f the court determines that a parent has abused drugs or alcohol or has been convicted of any drug offense under title 13, chapter 34[] or any violation of § 28-1381, 28-1382 or 28-1383 within twelve months before the petition or the request for legal decision-making or parenting time is filed, there is a rebuttable presumption that sole or joint legal decision-making by that parent is not in the child's best interests.

**¶20** Although Mother testified that Father had a DUI from 2022, she petitioned in 2024. Thus, his DUI would fall outside the twelve-month window set forth by the statute. A.R.S. § 25-403.04(A). And although Mother told the court it could review an earlier filing "to see the details," she introduced no evidence beyond her testimony of the DUI at the hearing. *See Vincent v. Nelson*, 238 Ariz. 150, 155 ¶ 18 ("[T]he family court is in the best position to judge the credibility of witnesses."). The superior court did not err in not applying the presumption set forth by § 25-403.04(A).

**¶21** Regarding the previous order prohibiting both parents from drinking while caring for Caleb, Mother testified that Caleb told her that Father drank around him and admitted a photo of Father drinking from a bottle near Caleb. She also admitted texts from Father's ex-girlfriend discussing his drinking. Conversely, Father testified that he does not abuse

alcohol and does not drink "when responsible for caring for [Caleb]." In support, he admitted blood alcohol level tests he voluntarily took revealing that, despite testing daily (sometimes multiple times a day), he only twice had a blood alcohol level above 0 in a three-month period. The court ultimately found Mother's evidence "insufficient to establish" that Father violated the prior order. Sufficient evidence supports the court's finding and we decline to reweigh the evidence on appeal. *See id.*; *Engstrom*, 243 Ariz. at 471 ¶ 4.

### IV.  Attorney's Fees and Costs

**¶22**　　　　Father requests his attorney's fees and costs on appeal pursuant to A.R.S. § 25-324 and Arizona Rule of Civil Appellate Procedure 21 and argues that Mother's positions were unreasonable. After consideration, we decline his request for fees. *See* A.R.S. § 25-324. As the prevailing party, he is entitled to his costs upon compliance with Arizona Rule of Civil Appellate Procedure 21.

**¶23**　　　　We also note that Mother's briefs include citations to cases that do not support the propositions for which she cites them. Going forward, misuse of artificial intelligence or the failure to provide accurate legal authority may result in sanctions. *See* ARCAP 13(a)(7); *Flynn v. Campbell*, 243 Ariz. 76, 83 ¶ 24 (2017) (we hold self-represented litigants to the same standard as attorneys).

### CONCLUSION

**¶24**　　　　For the reasons stated, we affirm.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:　　　JR